UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :
SAUL JEUNE,                                               :
                                                          :
                                    Plaintiff,            :          11 Civ. 7424 (JMF)
                    -v-                                   :
                                                          :          OPINION AND ORDER
CITY OF NEW YORK, et al.,                                 :
                                                          :
                                    Defendants.           :
                                                          :
-----------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____              │
│ DATE FILED: 01/09/2014               │
└─────────────────────────────────────┘
```

JESSE M. FURMAN, United States District Judge:

      Plaintiff Saul Jeune, a police officer with the New York City Police Department

("NYPD"), sues the City of New York (the "City") and two NYPD officers, Sergeant Anita

Polanco[1] and Lieutenant Frankie Rivera.  Plaintiff asserts that Sergeant Polanco and Lieutenant

Rivera discriminated against him, retaliated against him for engaging in protected activity, and

subjected him to a hostile work environment, all in violation of federal, state, and local

antidiscrimination statutes, as well as New York state tort law.  Defendants now move for

summary judgment.  (Docket No. 26).  For the reasons discussed below, Defendants' motion is

GRANTED in part and DENIED in part.

## BACKGROUND

      The following facts, taken from the Complaint and the admissible materials submitted by

the parties, are viewed in the light most favorable to Plaintiff, as he is the non-moving party.

---

[1]     Although Plaintiff spells Sergeant Polanco's surname "Polanko" in the Complaint
(Docket No. 1) and Memorandum of Law in Opposition to Defendants' Motion for Summary
Judgment (Docket No. 33), the Court adopts the "Polanco" spelling used by Defendants in their
summary judgment papers.  (Docket Nos. 28, 35).

Plaintiff, who identifies as black and of Haitian descent, has been employed as a police officer by the NYPD since January 2005. (Collyer Decl. (Docket No. 27), Ex. A ("Collyer Jeune Dep.") 18:6-11; 88:4-6; Collyer Decl., Ex. B ("Appointment Memorandum")). He is assigned to the Twenty-Sixth Precinct. (Pl.'s Responses Defs.' Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s Rule 56.1 Statement") (Docket No. 34) ¶ 6). During much of the time relevant to this case, Plaintiff had a regular partner named Officer Richards; they worked together most — but not all — of the time. (Collyer Jeune Dep. 46:10-20).

In 2009, another police officer in the Twenty-Sixth Precinct, Jill Rosenthal, filed a discrimination lawsuit against Sergeant Nancy Fuocco. (Collyer Jeune Dep. 69:17-70:6). The law firm of Cronin & Byczek, which represents Plaintiff in the instant matter, contacted Plaintiff in January 2010 to explore the possibility that he would serve as a witness in the Rosenthal case; ultimately, however, he never gave testimony or did anything else to assist Rosenthal in the litigation. (Mashhadian Decl. (Docket No. 32), Ex. B ("Mashhadian Jeune Dep.") 71:2-9; 72:5-6; 73:3-9; Pl.'s Rule 56.1 Statement ¶ 21).[2]

The evening of March 11, 2011, Plaintiff's wife gave birth to their baby daughter. (Pl.'s Rule 56.1 Statement ¶ 46; Collyer Jeune Dep. 83:3-6). At about midnight that same night, Plaintiff called the desk officer to request an emergency day off (known as an "E-day") for the following day, March 12, 2011, and the desk officer granted it. (Collyer Jeune Dep. 82:14-83:11; Pl.'s Rule 56.1 Statement ¶ 47). Plaintiff then requested the next day, March 13, as

---

[2]     In his Opposition Memorandum, Plaintiff states that he was a "named witness" in the lawsuit (Pl.'s Opp'n 9), but he does not submit any evidence supporting the notion that he was "named" as a witness on any papers. Moreover, when asked at his deposition whether he alleged that he was "listed as a witness, identified as a witness," Plaintiff stated only: "I was identified." (Mashhadian Jeune Dep. 71:2-4). For purposes of this motion, however, the Court assumes that Defendants were aware that Plaintiff might serve as a witness in the Rosenthal lawsuit.

2

another day off, which Sergeant Polanco initially denied, but ultimately granted.  (Collyer Decl.,
Ex. C ("Collyer Polanco Dep.") 39:24-40:6; 40:13-41:5; Pl.'s Rule 56.1 Statement ¶ 52).

On March 14, Plaintiff submitted a "Leave of Absence Report" requesting to take off
from March 17 through March 21.  (Collyer Decl., Ex. H).  Sergeant Polanco testified that
requests for more than one day off at a time could only be granted by a higher-ranking officer,
such as Lieutenant Rivera (Collyer Polanco Dep. 31:24-32:10); Plaintiff contests this testimony,
however, asserting that Sergeant Polanco did, in fact, have authority to grant such a request.
(Pl.'s Rule 56.1 Statement ¶ 34).  In any case, Plaintiff's request for those days off was denied.
(Collyer Jeune Dep. 87:2-4; Pl.'s Rule 56.1 Statement ¶ 50).  According to Defendants, the
denial was based on staffing needs and Plaintiff's failure to follow NYPD protocol in requesting
the time off.  (Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem.") 7-8).

Shortly thereafter, on or about March 17, 2011, Plaintiff filed an internal complaint with
the NYPD Office of Equal Employment Opportunity ("OEEO"), claiming that the denial of
additional leave was discriminatory.  (Mashhadian Jeune Dep. 107:1-8; Mashhadian Decl., Ex. E
("Mashhadian Rivera Dep.") 54:11-23).  Sergeant Polanco and Lieutenant Rivera both
acknowledged that they were aware of the OEEO complaint.  (*See* Pl.'s Opp'n 11; Mashhadian
Rivera Dep. 54:11-23).  At the time of his deposition in this case, Plaintiff was unaware of the
status of the OEEO proceedings.  (Mashhadian Jeune Dep. 107:9-12).

Plaintiff also testified that Sergeant Polanco treated him unfairly on a number of other
occasions, although the record does not make clear when the conduct occurred.  Specifically,
Plaintiff testified that Sergeant Polanco threatened him with various forms of discipline
(Mashhadian Jeune Dep. 56:12-17, 57:7-24), yelled at him (*id.* 57:23-24), gave him particularly
difficult and undesirable assignments (*id.* 91:19-92:2), subjected him to excessive scrutiny (*id.*

3

96:12-17), denied him allotted meal times (*id.* 81:13-15; Pl.'s Opp'n 6), separated him from his

partner (Mashhadian Jeune Dep. 111:21), gave him low performance evaluations (*id.* 59:9-

60:11), and denied him credit for two arrests from crime scenes that he had investigated

(Mashhadian Decl., Ex. H ("50-h Hearing") 63:6-64:24).

## DISCUSSION

Plaintiff brings four types of claims.  First, he brings claims for discrimination based on

his race and national origin, under Title VII of the Civil Rights Act of 1964 ("Title VII")

(Compl. (Docket No. 1) ¶¶ 58-63), 42 U.S.C. § 1981 (*id.* ¶¶ 35-38), 42 U.S.C. § 1983 (*id.* ¶¶ 39-

44), the New York State Human Rights Law ("NYSHRL") (*id.* ¶¶ 64-67), and the New York

City Human Rights Law ("NYCHRL") (*id.* ¶¶ 68-71).  Second, he claims that Defendants

unlawfully retaliated against him, also under Title VII (*id.* ¶¶ 58-63), Section 1981 (*id.* ¶¶ 35-38),

Section 1983 (*id.* ¶¶ 39-44), the NYSHRL (*id.* ¶¶ 64-67), and NYCHRL (*id.* ¶¶ 68-71).  Third, he

alleges that he was subjected to a hostile work environment, presumably also in violation of the

aforementioned federal, state, and local statutes.  (*Id.* ¶¶ 45-52).  Finally, he brings an array of

state tort claims.  (*Id.* ¶¶ 72-97).  The Court addresses each set of claims in turn.

## A.  Standard of Review

Summary judgment is appropriate where the admissible evidence and the pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the

"evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542

F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the

4

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

**B.  Title VII Liability**

At the outset, the Court dismisses all Title VII claims brought against Sergeant Polanco and Lieutenant Rivera in their individual capacities, as individuals are not subject to liability under Title VII. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam). The Court also dismisses Plaintiff's Title VII claims against the two individual Defendants in their

official capacities, as the claims are duplicative of Plaintiff's claims against the City.  *See, e.g.*, *Yu v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 11 Civ. 3226 (JMF), 2013 WL 3490780, at *4 (S.D.N.Y. July 12, 2013) ("[A] plaintiff may not bring a Title VII claim against an individual in his or her official capacity if the claim is duplicative of the claim against the public employer."); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410-11 (E.D.N.Y. 2010) (similar).

## C.  Section 1981 Liability

In addition, the Court dismisses all of Plaintiff's claims brought under Section 1981. "The express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).  Some courts have held that the Civil Rights Act of 1991 statutorily overruled *Jett* to create an implied cause of action against state actors under Section 1981, *see, e.g.*, *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), but courts in the Second Circuit continue to follow the Supreme Court's holding in *Jett*, *see Gladwin v. Pozzi*, 403 F. App'x 603 (2d Cir. 2010) (summary order) ("[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983."); *Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (collecting cases).  The Second Circuit has not yet ruled on the issue in a precedential holding, and so this Court continues to follow *Jett*.  All of Plaintiff's Section 1981 claims are therefore subsumed by the claims under Section 1983, and must be dismissed.

## D.  Disparate Treatment Claims

The Court turns then to Plaintiff's discrimination claims.  Discrimination claims brought under Title VII, Section 1983, and the NYSHRL are all evaluated under the burden-shifting

framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (Title VII and Section 1983); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999) (NYSHRL). The Second Circuit recently noted that "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Typically, however, "courts in the Second Circuit . . . appl[y] [the] liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework." *Farzan v. Wells Fargo Bank, N.A.*, No. 12 Civ. 1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases).

Under that framework, a plaintiff must first make out a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The elements required for a *prima facie* case for federal and state claims differ slightly from the elements required for NYCHRL claims. For federal and state claims, a plaintiff must show that: (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *See, e.g.*, *Spiegel*, 604 F.3d at 80. The NYCHRL modifies the third prong of the *prima facie* case so that the adverse action need not be "material." Instead, a plaintiff bringing a NYCHRL claim must simply demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Id.*; *see also Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011). Such a plaintiff, however, must still adduce evidence supporting an inference of discrimination. *Williams*, 836 F. Supp. 2d at 177; *see also Kerman-Mastour v. Fin. Indus. Regulatory Auth.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011) ("[E]ven under the more liberal NYCHRL, summary

7

judgment will still be appropriate where a plaintiff does not adduce sufficient evidence of a link

between her termination and a discriminatory motive . . . .").

If the plaintiff meets this initial burden, the burden then shifts to the defendant "to

articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell*

*Douglas*, 411 U.S. at 802.  If the defendant does so, then the burden then shifts back to the

plaintiff to show "pretext," *id.* at 804-05, and, "'to defeat summary judgment[,] . . . the plaintiff's

admissible evidence must show circumstances that would be sufficient to permit a rational finder

of fact to infer that the defendant's employment decision was more likely than not based in

whole or in part on discrimination,'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)

(quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).  The plaintiff must

produce "not simply some evidence, but sufficient evidence to support a rational finding that the

legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely

than not discrimination was the real reason" for the challenged actions.  *Van Zant v. KLM Royal*

*Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks and alteration omitted)

(emphasis added).  That is, "a reason cannot be proved to be a 'pretext for discrimination' unless

it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted).

Here, Defendants make a strong case that Plaintiff cannot satisfy the third prong of either

*prima facie* test (Defs.' Mem. 4-6; 19), but the Court need not decide the issue because, even if

he could satisfy all three of the first prongs, he cannot satisfy the fourth.[3]  Plaintiff himself

acknowledged that he had never heard Sergeant Polanco or Lieutenant Rivera make derogatory

---

[3]      Although NYCHRL claims are normally reviewed separately from federal and state
discrimination claims, *see Mihalik*, 715 F.3d at 113, the Court considers them together here
because Plaintiff fails to point to any evidence supporting an inference of discrimination, which
is required for all claims.

comments about Haitians or blacks.  (Mashhadian Jeune Dep. 92:9-14).  Instead, he asserts that

he was treated differently from officers of other races.  (*See* Pl.'s Opp'n 7 (arguing that Plaintiff

has "made a case of . . . disparate treatment")).  The only evidence he proffers in support of that

assertion, however, is his own conclusory testimony that Sergeant Polanco "didn't . . . [treat] the

white officers or the Latin officers" in a similar fashion (Mashhadian Jeune Dep. 89:8-12), and

that he "[didn't] think she would" extend the hours of someone whose child was sick if the

person was "of her own race."  (*Id.* 91:11-15).  But this testimony lacks the detail necessary to

support an inference of discrimination.  *See, e.g.*, *Norville v. Staten Island Univ. Hosp.*, 196 F.3d

89, 96 (2d Cir. 1999) (affirming dismissal of race discrimination claim where plaintiff failed to

provide evidence about the work performed by allegedly "similarly situated" employees); *Sareen*

*v. Port Auth. of N.Y. & N.J.*, No. 12 Civ. 2823 (PAE), 2013 WL 6588435, at *9 (S.D.N.Y. Dec.

16, 2013) (granting summary judgment where plaintiff "[did] not offer any evidence on which to

assess [the allegedly similarly situated employee's] qualifications").  Plaintiff does not state who

these other officers were or provide any other information that would allow the Court to

determine whether they were similarly situated.  (Mashhadian Jeune Dep. 92:9-14).

     Plaintiff cites specific examples of white officers who were allegedly treated differently

in only one instance — namely, officers who were granted time off when their children were

born.  (Collyer Jeune Dep. 97:19-106:24).  Even so, Plaintiff fails to provide other critical

information about these officers, such as when they requested the time off, whether they

followed proper protocol, or whether the staffing considerations were similar to the staffing

considerations at the time that Plaintiff requested leave.  At bottom, Plaintiff conclusorily asserts

that he was treated poorly because of his race and national origin.  That does not suffice to defeat

summary judgment on any of Plaintiff's disparate treatment claims.  *See, e.g.*, *Baptiste v.*

*Cushman & Wakefield*, No. 03 Civ. 2102 (RCC), 2007 WL 747796, at *7 (S.D.N.Y. Mar. 7, 2007) (granting motion for summary judgment of claims under Section 1981 and Title VII where plaintiff failed to present any anecdotal evidence giving rise to an inference of discrimination, but repeatedly expressed her belief that she was discriminated against in deposition testimony); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 308 (2004) (affirming dismissal of NYCHRL claims on summary judgment where plaintiff was "hard pressed at her deposition to articulate any basis for her claim that defendants' unfair treatment . . . was race-based, other than a repeated assertion — or assumption — that she was the only one so treated"). Accordingly, Defendants' motion for summary judgment on Plaintiff's disparate treatment claims is GRANTED.[4]

## E. Retaliation Claims

Next, the Court turns to Plaintiff's retaliation claims, which are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). To establish a *prima facie* case of retaliation under the state and federal laws, a plaintiff must show that (1) he engaged in a protected activity; (2) his employer was aware of this activity; (3) the employer subjected him to a materially adverse employment action; and (4) a causal connection exists between the adverse action and the protected activity. *Id.* In this context, "a materially adverse employment action is one that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Donohue v. Finkelstein Mem'l Library*, No. 12 Civ. 7218 (DLC), 2013 WL 6588637, at *7 (S.D.N.Y. Dec.

---

[4]     In the alternative, even if Plaintiff could establish a *prima facie* case, his claims regarding the denial of leave time would fail under the third step of the *McDonnell Douglas* burden-shifting framework, as Defendants have proffered legitimate, non-discriminatory reasons for the denial — specifically, that Plaintiff submitted his request too late and that staffing considerations prevented Defendants from granting him the time off (Def.'s Mem. 7-8) — and Plaintiff has not demonstrated that Defendants' acts were more likely than not the result of discrimination.

16, 2013).  The elements of a retaliation claim under the NYCHRL are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon v. Columbia Univ. Med. Ctr.*, No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted).

In this case, Plaintiff advances two theories of retaliation.  His principal theory is that he was retaliated against for his participation in the Rosenthal lawsuit.  (Pl.'s Opp'n 9-11).  Plaintiff argues that after Defendants found out about his participation in that lawsuit, they "commenced a barrage of retaliatory acts" — in essence, the same acts that he invoked in support of his disparate treatment claims, including the denial of leave time.  (*Id.* 10-11).  Plaintiff's second theory is that Sergeant Polanco retaliated against him for filing the internal complaint with the NYPD OEEO by giving him low ratings on his performance evaluations, writing negative remarks on his monthly reviews, and depriving him of credit for two arrests from a crime scene that he had investigated.  (Pl.'s Opp'n 11-12; Mashhadian Jeune Dep. 107:1-12).  The Court addresses each theory in turn.

### 1. The Rosenthal Theory

Plaintiff's retaliation claims brought under the first theory fail, as Plaintiff has failed to adduce evidence of a causal connection between his participation in the Rosenthal lawsuit and any of the alleged retaliatory acts.  A plaintiff can demonstrate proof of a causal connection "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of*

*Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  Here, Plaintiff does not contend that there is any direct evidence of retaliatory animus.  The circumstantial evidence, however, is far too tenuous to raise a genuine dispute of fact with respect to the existence of a causal connection.

In particular, the only evidence that Plaintiff points to in support of a causal connection between his participation in the Rosenthal lawsuit and Defendants' allegedly retaliatory acts is the temporal relationship between the two.  (Pl.'s Opp'n 10 (stating that Defendants began to engage in retaliatory behavior "[u]pon the discovery of Plaintiff's involvement in the Rosenthal lawsuit")).  Although the Second Circuit has declined to "draw a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a [causal connection]," *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks omitted), district courts within the Circuit "have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation," *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).  Here, the gap was considerably longer: The only adverse action for which Plaintiff provides a specific date is the denial of his leave time, which occurred in March 2011 (Collyer Decl., Ex. D; Mashhadian Jeune Dep. 86:4-87:4), *fourteen months* after he was named as a witness in the Rosenthal lawsuit (Pl.'s Rule 56.1 Statement ¶ 21).[5]  Although such a gap does not preclude a plaintiff from establishing a causal connection through other evidence, it is plainly insufficient on its own.  *See, e.g.*, *Murray*, 528 F. Supp. 2d at 274-76 (finding insufficient evidence of a causal connection where about seven months had passed between the protected

---

[5]     In theory, the relevant time gap could have been shorter if Defendants did not find out about Plaintiff's potential participation in the Rosenthal lawsuit in January 2010.  But Plaintiff, who bears the burden of showing a causal connection, does not point to any evidence that Defendants learned about his potential participation later, let alone close enough to March 2011 to support an inference of discrimination.

activity and adverse action, and plaintiff offered no other circumstantial evidence of connection).
Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claims under
this theory is GRANTED.

### 2. OEEO Complaint Theory

Plaintiff's retaliation claims under the second theory, however, survive as to Sergeant
Polanco and the City. As noted, Plaintiff contends that Sergeant Polanco retaliated against him
for filing the internal OEEO complaint by giving him low performance evaluations, writing
negative remarks about him on monthly reports, and depriving him of arrests that he had
investigated. (Pl.'s Opp'n 11-12). Defendants' sole response is to point out that Plaintiff's
performance evaluations actually improved after he filed the internal complaint. (Defs.' Reply
Mem. Further Supp. Mot. Summ. J. ("Defs.' Reply") 7). That may be true, but it is no answer to
Plaintiff's contention that Sergeant Polanco also retaliated against him for filing the OEEO
complaint by reassigning two arrests for which he should have received credit to another officer
for no apparent reason. (50-h Hearing 63:6-64:23).

That evidence is sufficient to establish a *prima facie* case. The filing of an internal
complaint against Defendants is plainly a protected activity, *see, e.g.*, *Raniola v. Bratton*, 243
F.3d 610, 624 (2d Cir. 2001), and there is no dispute that Sergeant Polanco was aware of the
complaint. In addition, although the issue is a close one, the Court finds that a reasonable jury
could conclude that Sergeant Polanco's alleged action "might have dissuaded a reasonable
worker from making or supporting a charge of discrimination," *Donohue*, 2013 WL 6588637, at
*7 (internal quotation marks omitted), and "would be reasonably likely to deter a person from
engaging in protected activity," *Leon*, 2013 WL 6669415, at *12 (internal quotation marks
omitted), as Plaintiff testified that credit for arrests are "good for [his] record" and presumably

13

might factor into matters such as promotion (50-h Hearing 64:14-16). *See also Brightman v. Prison Health Serv.*, 970 N.Y.S.2d 789, 791 (2d Dep't 2013) ("In assessing retaliation claims that involve neither ultimate actions nor materially adverse changes in terms and conditions of employment, it is important that the assessment be made with a keen sense of workplace realities . . . and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct in light of those realities." (internal quotation marks omitted)).

Finally, the timing of Sergeant Polanco's alleged retaliation supports a causal connection, as the incident at issue took place in March or April 2011 (*id.* 64:21-23) — either the same month that Plaintiff filed the OEEO complaint or one month after. (Mashhadian Jeune Dep. 107:1-23). *See Roberts v. Phillip Morris Mgmt. Corp.*, 733 N.Y.S.2d 190, 191 (1st Dep't 2001) ("[T]emporal proximity may suffice to satisfy plaintiff's prima facie burden to show a causal connection between [the] filing of the complaint and [the adverse action] . . . ."). As Defendants have offered no explanation for Sergeant Polanco's alleged behavior that would shift the burden back to Plaintiff, summary judgment on this retaliation theory must be DENIED with respect to Sergeant Polanco. It is also DENIED with respect to the City under a theory of vicarious liability. *See, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 285 (2003). It is, however, GRANTED with respect to Lieutenant Rivera, as Plaintiff offers no evidence suggesting that the Lieutenant was involved in depriving him of credit for any arrests.

**F.  Hostile Work Environment Claims**

Next, the Court turns to Plaintiff's hostile work environment claims. Under state and federal law, a plaintiff must establish that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993) (internal quotation marks omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *Forrest*, 3 N.Y.3d at 305, 310-11 (2004) (NYSHRL).  In addition, a plaintiff must demonstrate that the hostile work environment "was caused by animus toward[] [him] as a result of [his] membership in a protected class." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (internal quotation marks omitted).  "An environment that . . . arises from personal animosity[] is not actionable under the civil rights statutes." *Id.* (internal quotation marks omitted).  Under the NYCHRL, the standard is lower; in particular, severity and pervasiveness are relevant only to damages, but not to liability.  *See id.*; *see also Acosta v. City of New York*, No. 11 Civ. 856 (KBF), 2012 WL 1506954, at *8 (S.D.N.Y. Apr. 26, 2012).  To survive summary judgment on a NYCHRL hostile work environment claim, however, a plaintiff must adduce evidence of "unequal treatment based upon membership in a protected class." *Acosta*, 2012 WL 1506954, at *8 (internal quotation marks omitted); *see also Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38-39 (1st Dep't 2009).

Like his disparate treatment claims, Plaintiff's hostile work environment claims fail because he does not make any showing that the actions purportedly creating a hostile work environment related to his race or national origin.  Plaintiff was allegedly yelled at, threatened with disciplinary action and monitoring, removed from his regular partner, assigned to undesirable posts, and received negative performance evaluations.  (Pl.'s Opp'n 13-14).  But Plaintiff admits that none of Defendants' comments toward him concerned his race or national origin (Mashhadian Jeune Dep. 92:9-14), and, as explained in the context of Plaintiff's discrimination claims, he provides no evidence that would allow the Court to conclude that any differential treatment he received was on account of his race or national origin.  Thus, Plaintiff fails to demonstrate the causal connection between his race or national origin and the allegedly

hostile actions required by the federal, state, and local statutes.  *See, e.g.*, *Forts v. N.Y.C. Dep't of Corr.*, No. 00 Civ. 1716 (LTS) 2003 WL 21279439, at \*6 (S.D.N.Y. June 4, 2003) (granting defendant's summary judgment motion on hostile work environment claims brought under federal, state, and local laws where alleged hostile incidents "[did] not objectively indicate that the work environment was . . . discriminatory").  Accordingly, Defendant's motion for summary judgment on the hostile work environment claims is GRANTED.

### G.  State Tort Claims

Finally, Plaintiff brings state tort claims for intentional infliction of emotional distress, negligent hiring, negligent supervision, and negligent retention.  (Compl. ¶¶ 72-97).  Defendant moves for summary judgment on all four of these claims, but Plaintiff only addresses Defendants' arguments regarding the intentional infliction of emotional distress claim. (*Compare* Defs.' Mem. 21-23 *with* Pl.'s Opp'n 19-20).  Accordingly, all of Plaintiff's tort claims other than the claim for intentional infliction of emotional distress are deemed abandoned and dismissed. *See, e.g.*, *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 331 (S.D.N.Y. 2012) (collecting cases supporting the proposition that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way" (internal quotation marks omitted)).

As for the intentional infliction of emotional distress claim, Plaintiff appears to ground the claim on the denial of leave time, as well as the general manner in which Sergeant Polanco allegedly treated him.  (Pl.'s Opp'n 20).  But, the hyperbole in Plaintiff's Memorandum of Law aside, Sergeant Polanco's behavior falls far short of being "extreme and outrageous," as required to establish an intentional infliction of emotional distress claim under New York law.  *Howell v.*

*N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993).  Although this standard is "flexib[le]" and "does not proscribe specific conduct," *id.* at 122, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  Here, there is simply no factual basis upon which a reasonable juror could conclude that Polanco's behavior meets this standard.

The denial of time off to care for one's family may certainly be upsetting, but it is not extreme or outrageous, particularly where one receives vacation time at other points during the year.  (Collyer Jeune Dep. 84:20-85:2; *see also* Collyer Decl., Ex. G).  In addition, any verbal insults Sergeant Polanco directed at Plaintiff fail because the challenged conduct "must consist of more than mere insults, indignities and annoyances." *164 Mulberry Street Corp. v. Columbia Univ.*, 771 N.Y.S.2d 16, 22 (1st Dep't 2004).  Even if the verbal insults had been racially or ethnically charged — and Plaintiff admits they were not — they would not be sufficiently extreme or outrageous.  *See, e.g.*, *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 548 N.Y.S.2d 513, 521 (2d Dep't 1989).  In fact, Plaintiff provides no evidence as to what Polanco actually said when she yelled at him, or how frequently this behavior occurred.  Courts in New York have noted that intentional infliction of emotional distress claims "typically fail because the challenged conduct is not sufficiently outrageous," *164 Mulberry Street*, 771 N.Y.S.2d at 22; *see also Howell*, 81 N.Y.2d at 122, and this claim is no different.[6]  As such, Defendants' motion for summary judgment on the emotional distress claim is GRANTED.

---

[6]    In addition, Plaintiff's claims for intentional infliction of emotional distress fail against the City because this tort is not an available cause of action against a governmental entity.  *See Pezhman v. City of New York*, 851 N.Y.S.2d 14, 16 (1st Dep't 2008).

17

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, except with respect to Plaintiff's retaliation claims based on his filing of the OEEO complaint against (a) Sergeant Polanco, excluding those claims brought under Section 1981 and Title VII; and (b) the City, excluding those claims brought under Section 1981.

The parties are reminded that their Joint Pretrial Order and all related filings required by the Court's Individual Rules and Practices for Civil Cases must be submitted within thirty days and that they should be prepared to go to trial approximately two weeks thereafter.  (Docket No. 17).  The parties shall immediately advise the Court by joint letter if they are interested in a referral to the assigned Magistrate Judge for purposes of settlement.

The Clerk of Court is directed to terminate Docket No. 26 and to terminate Lieutenant Rivera as a Defendant in this action.


        SO ORDERED.

Dated: January 9, 2014
       New York, New York
                                        _____
                                        JESSE M. FURMAN
                                        United States District Judge